IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| MICHAEL A. INGALLS, JR.,<br><br>    Petitioner,<br><br>v.<br><br>UNITED STATES OF AMERICA,<br><br>    Respondent. | HONORABLE JEROME B. SIMANDLE<br><br>Civil No. 15-5495 (JBS)<br>[Relates to Cr. No. 13-359 (JBS)]<br><br>**MEMORANDUM<br>OPINION** |

APPEARANCES:

David W. Sufrin, Esq.
ZUCKER, STEINBERG & WIXTED, P.A.
415 Federal Street
Camden, NJ 08103
    Attorneys for Petitioner

Michael A. Ingalls, Jr.
Reg. No. 65262-050
FCI ALLENWOOD LOW
Federal Correctional Institution
P.O. Box 1000
White Deer, PA 17887
    Petitioner Pro Se (Post-Judgment)

CRAIG CARPENITO, UNITED STATES ATTORNEY
    By: Deborah Prisinzano Mikkelsen
        Assistant U.S. Attorney
401 Market Street
Camden, NJ 08101
    Attorneys for Respondent

**SIMANDLE, District Judge**

    Michael A. Ingalls, Jr., Petitioner, was convicted before this Court upon his plea of guilty to the crimes of conspiracy to commit bank fraud, in violation of 18 U.S.C. § 1349, and

theft of mail, in violation of 18 U.S.C. § 1708.  His conviction and sentence were affirmed on appeal.  United States v. Ingalls, App. No. 14-1409, 2015 WL 1189185 (Mar. 17, 2015) (non-precedential opinion).

His retained attorneys, Zucker, Steinberg & Wixted, P.A., by Dennis Wixted, Esq. and David W. Sufrin, Esq., filed a petition for relief under 28 U.S.C. § 2255 on July 9, 2015, claiming that at sentencing the PSR contained factually incorrect information about the date of his sentencing for a 1995 felony offense that would place that conviction outside the 15-year time period of U.S.S.G. § 4A1.2(e) for considering such conviction in computing his Criminal History Category ("CHC"). Petitioner asserted that he was erroneously sentenced at CHC V and that the correct classification was CHC IV, resulting in a lower recommended Guideline Range.

This Court denied the petition and denied a certificate of appealability in an Opinion and Order filed January 19, 2016. [Docket Items 7 & 8.]  No appeal was taken.

Thereafter, Mr. Ingalls, acting pro se, filed the present motion before the Court, seeking to vacate the January 19, 2016 Opinion and Order, and to add an ineffective assistance of counsel claim to his already-adjudicated § 2255 petition.

[Docket Item 9, filed March 18, 2016.][1] Petitioner Ingalls, acting pro se, essentially claimed that his attorneys filed the § 2255 petition without his knowledge and permission, and that he sought to include a claim of ineffective assistance of his previous trial counsel (Richard Sparaco, Esq.) who advised him to plead guilty to the § 1349 charge of conspiracy to commit bank fraud when he was actually innocent of that crime, lacking the requisite intent to defraud a bank. [Docket Item 9.] He also alleged that Mr. Wixted, who was retained and substituted into the case for Mr. Sparaco and represented him at sentencing and on appeal, was constitutionally ineffective for failing to raise the § 1349 "intent" issue at sentencing or on appeal, and that Mr. Wixted was therefore conflicted in preparing the § 2255 petition containing no claim of ineffective assistance. [Docket Item 9.] He claimed that he had previously filed his amended new ground in a pro se filing dated December 14, 2015, while his counseled § 2255 petition was still pending decision.

After Mr. Ingalls claimed that his attorneys filed his § 2255 petition without authorization, and that he purportedly filed a pro se amendment, and that Mr. Ingalls sought to add a

---

[1] In addition to his motion to vacate the 2016 final judgment denying § 2255 relief, Mr. Ingalls has filed two other motions which are also addressed herein: a motion to amend the § 2255 petition [Docket Item 23, filed June 7, 2018], and a motion to expedite the Court's decision. [Docket Item 24, filed June 12, 2018.]

3

new ground two months after his § 2255 petition had been decided, the Court addressed the situation in its Order of February 22, 2017. [Docket Item 12.] That Order required Ingalls' attorneys, David W. Sufrin, Esq., and Dennis Wixted, Esq., to respond to the allegations in Ingalls' motion. [Id.] Mr. Sufrin submitted his Reply [Docket Item 13], accompanied by his Certification in opposition [Docket Item 14], and a Corrected Certification [Docket Item 16], on March 9, 2017.

Mr. Sufrin's certification refuted Ingalls' allegations, demonstrating that Ingalls authorized and knew about the § 2255 petition and developments. He offered to provide attorney-client privileged communications on this subject if Ingalls was deemed to have waived the privilege by raising allegations of non-authorized filing and incompetence of counsel.

On May 2, 2017, Ingalls filed a response [Docket Item 17] claiming that attorney Sufrin was inaccurate but offering no evidence beyond generalized accusations. Ingalls specifically offered no proof that he ever submitted to the Clerk of Court a pro se motion on December 14, 2015, as he previously claimed, while his counseled § 2255 petition was pending. He did not refute the fact that attorney Sufrin kept him well-apprised of the filing of the § 2255 petition, the grounds raised, and developments in the case.

4

Mr. Ingalls asked that the Court order Mr. Sufrin to produce copies of all documents mentioned in Mr. Sufrin's certification. [Docket Item 17 at ¶ 3.]

The Court addressed these submissions in its Memorandum Opinion and Order filed August 9, 2017. [Docket Item 19.] After tracing the procedural history, the Court advised that neither the Clerk's Office nor the Judge's Chambers received Ingalls' alleged motion to amend in December of 2015, and that Mr. Sufrin also had indicated he found no copy of such pro se pleading by Ingalls to the Court seeking to amend or supplement his § 2255 petition. [Id. ¶ 5.] The Court determined that Ingalls "waived the privilege regarding his communications with counsel as well as the protection of counsel's work product within the subject matter of which Mr. Ingalls now complains." [Id. ¶ 6] (citing, inter alia, Rhone-Poulenc Rorer, Inc. v. Home Indem. Co., 32 F.3d 851, 863 (3d Cir. 1994)). The Court found each of the documents cited in Mr. Sufrin's earlier corrected Certification [Docket Item 16 at ¶ 13] was within the scope of the subject-matter waiver of attorney-client privilege and should therefore be produced to Mr. Ingalls and filed under seal with the Court. [Docket Item 19 at ¶ 6.]

The Court specifically ordered Mr. Ingalls "to submit and serve all evidence demonstrating that he composed and submitted

5

his own motion to amend the § 2255 petition on or about December 14, 2015, as he claims." [Id. ¶ 7.]

Mr. Sufrin timely submitted all such documents, appended to his Declaration of August 29, 2017. [Docket Item 20.] His Declaration painstakingly itemizes the correspondence and documents exchanged between Ingalls and his lawyers at Zucker, Steinberg, Sonstein & Wixted, P.A., from July 21, 2013 through December 29, 2015. Exhibit A thereto, consisting of 145 pages, contains the documents. [Docket Item 20-1.]

Mr. Ingalls, given the opportunity to review the documents and submit evidence pursuant to the Court's August 9, 2017 directive [Docket Item 19], did not do so. Instead, Ingalls waited until June 7, 2018, to file a pro se "Motion to Amend Pursuant to FRCivP 15(c)." [Docket Item 23]. Ingalls' motion simply requests that the Court "grant this motion giving Petitioner at least 30 days from the Court's decision to file Petitioner's amended petition." [Id.] He does not attach a proposed copy of the Amended Petition to his motion but instead attaches a document, namely, a letter from Mr. Sufrin to the Clerk of the U.S. Court of Appeals for the Third Circuit dated October 16, 2014, in response to Mr. Ingalls' attempt to raise a new issue on appeal pro se. Mr. Sufrin's letter indicated that the issue Mr. Ingalls sought to raise regarding miscalculation of criminal history under U.S.S.G. 4A1.2(d), was already

6

addressed in counsel's appellate brief, and that Mr. Ingalls' claim that he sought to withdraw his plea of guilty after the Court determined his criminal history category at sentencing was not raised below and not a proper subject of appeal.

The Government opposes this motion, pointing out that Ingalls failed to explain the significance of Sufrin's letter as a basis for any new claim. [Docket Item 25 at 2.] The Government argues that the fact that Ingalls filed a pro se brief with the Third Circuit on a Guidelines-related issue while counsel were handling his appeal in December 2014, which was at least seven months before counsel filed the present § 2255 petition in July 2015, does not serve as proof that he tried to amend his § 2255 petition a year later, in December 2015. [Id.] Moreover, the Government correctly points out that any amendment is beyond the scope of the basis for reopening the docket in this previously-adjudicated § 2255 petition, which was to determine whether the counseled petition upon which the Court ruled was unauthorized by Ingalls, as explained in the Court's Order of February 22, 2017. [Docket Item 12]. The Government points out that Ingalls' motion is untimely under § 2255(f) and would also be a second or successive petition fitting none of the exceptions of § 2255(h).

The record carefully assembled herein provides no basis for Ingalls' assertion that he tried to state a claim of ineffective

assistance of counsel in December 2015.  Nobody has received such a document -- not the Clerk, the judicial chambers, or counsel of record herein.  Mr. Ingalls has not produced a record of mailing from his former place of confinement; the copy he attached to his March 18, 2016 motion to amend [Docket Item 9] contains an unsworn "Certificate of Service" bearing his signature and indicating only that he mailed the document to the United States Attorney for the District of New Jersey in Camden, New Jersey [Docket Item 9 at p. 10], but no indication that he filed same with the Clerk of Court nor that he mailed a copy to his counsel of record, Mr. Sufrin.

Moreover, the record conclusively demonstrates that Ingalls requested his attorneys to file the § 2255 petition and that he knew the grounds they raised on his behalf and never indicated to them that he wished to claim ineffective assistance of sentencing counsel.

Counsel's certification establishes that Mr. Sufrin and Mr. Ingalls frequently communicated about the § 2255 petition and that "[a]ll our briefs and pleadings were sent to Mr. Ingalls, and the letters and the certificates of service appear to confirm as much."  [Sufrin (Corrected) Certification, Docket Item 16 at ¶ 5.]  Further, "Mr. Ingalls received copies of our pleadings, and he knew (and specifically edited) the § 2255

8

Petition." [Id. at ¶ 7.] Again, Mr. Ingalls offers nothing to the contrary.

Counsel also remembers that "Mr. Ingalls asked Mr. Wixted to file the Petition after his appeal was denied. Mr. Ingalls never told me he believed he wasn't effectively represented, whether by Mr. Wixted or Mr. Sparaco. We were authorized to file the § 2255 Petition." [Id. ¶ 8.] Further, "Mr. Wixted spoke to Mr. Ingalls at some point after the § 2255 application was filed, and he was apparently satisfied that the arguments were sound and inclusive." [Id. at ¶ 10.] Again, Mr. Ingalls does not attempt to address the evidence -- the testimony of Mr. Sufrin and the documents exchanged between himself and his attorneys -- which establish Ingalls' authorization and knowledge of the § 2255 Petition herein.

Returning now to the original pro se motion by Ingalls to vacate the Court's decision denying § 2255 relief [Docket Item 9], it is apparent there is no factual basis for his allegations that the § 2255 Petition was filed without his knowledge and pursued contrary to his wishes. He requested counsel to file it, he communicated about it, he made various suggestions to counsel, and they litigated it for him. Far from an unauthorized § 2255 petition, the Court finds that the § 2255 petition filed by Ingalls' counsel was fully authorized and its contents known to Mr. Ingalls. The grounds raised in the § 2255

9

petition were litigated and decided, the petition was denied on January 19, 2016, and there is no just cause to vacate the judgment or to permit new post-judgment claims to be raised. Ingalls' pro se motion for relief from the judgment denying § 2255 relief will be denied.

Regarding Ingalls' assertion [Docket Item 9] that the Court should reopen the judgment because it overlooked claims raised pro se in his alleged December 14, 2015 motion, the assertion lacks merit. There was no submission to this Court from Ingalls in December 2015 or at any time until his post-judgment motion on March 18, 2016, and nothing was overlooked in the Court's Opinion and Order of January 19, 2016.

Furthermore, the Court denies Mr. Ingalls' recent motion to amend his petition [Docket Item 23], filed June 7, 2018. He has supplied no proposed amended petition, and the amendment would be untimely. Ingalls had the obligation by law to raise all § 2255 grounds within one year of his conviction becoming final, which occurred upon the Third Circuit's affirmance of his sentence on March 17, 2015 and expiration of the time to seek certiorari. An amendment offered three years later, on June 7, 2018, and also more than sixteen months after his counseled petition was adjudicated, is out of time under 28 U.S.C. § 2255(f). Ingalls is bound by the determinations of his counseled petition and is not free to add grounds at this time

because this amounts to a second or successive petition under 28 U.S.C. § 2255(h). There is also no evidence that Ingalls asked his attorneys to raise this new ground at any time.

Such an amendment should also not be permitted because it is futile. The crux of Ingalls' initial post-judgment submission herein on March 18, 2016 [Docket Item 9] was stated in his attachment thereto, the so-called pro se motion dated December 14, 2015, which was never received by the Court or by counsel until Ingalls attached it to his March 18, 2016 submission. Ingalls argues that Mr. Wixted, who represented him at sentencing and on direct appeal, was ineffective for failing to raise a claim that there was no factual basis for pleading guilty to the bank fraud conspiracy count; Ingalls alleges: "This claim was abandoned by Mr. Wixted in the habeas proceedings because of the obvious liability that attached to his malpractice during the sentencing and appellate stages of the case. Given Mr. Wixted's obvious and actual conflict of interest, he could not have been expected to challenge his own effectiveness in the collateral pleadings." [Docket Item 9 at p.2.]

A claim for ineffective assistance of counsel requires a petitioner to demonstrate: (1) that the representation rendered by the attorney fell below an objective standard of reasonableness; and (2) that the deficient representation was

11

material, i.e., that the petitioner has demonstrated prejudice as a result of counsel's deficient performance. Strickland v. Washington, 466 U.S. 668, 687-692 (1984). Because "counsel cannot be deemed ineffective for failing to raise a meritless claim," Ross v. Dist. Att'y of the City of Allegheny, 672 F.3d 198, 211 n. 9 (3d Cir. 2012) (quoting Werts v. Vaughn, 228 F.3d 178, 202 (3d Cir. 2000)), we must first consider whether a challenge to the guilty plea's factual basis would have been meritless.

Here, Mr. Ingalls would argue that he was not factually guilty because there is no evidence or other factual basis to believe he had the intent to defraud a bank of its funds; he instead offers the theory that he only intended to substitute a false payee for the real one on these stolen checks, thus stealing from the true payee but not from the bank. [Docket Item 9 at pp. 5-10.] Under Mr. Ingalls' theory, "[t]he banks were never at risk of losing a single dime because the check issuers would not learn of the fraud until months after being victimized -- leaving the bank with no liability." [Id. at p.5.] Thus, according to Ingalls, "counsel's advice to enter a plea of guilty deprived Petitioner of his right to effective assistance of counsel. But for counsel's advice, Petitioner would never have entered a plea of guilty to the Bank Fraud Conspiracy count." [Id.] Ingalls notes that a conviction under

12

§ 1344 requires "intent to defraud the bank" rather than merely defrauding the bank's account holder, citing United States v. Thames, 315 F.3d 190, 197 (3d Cir. 2002) and United States v. Leahy, 445 F.3d 634, 647 (3d Cir. 2006) (requiring proof of "intent to cause a bank loss or potential liability"). [Docket Item 9 at 6-7.] Ingalls then makes the rather astonishing statement that his conviction should be set aside because there was no factual basis for his plea of guilty. [Id. at 9.] Thus, according to Ingalls, Mr. Wixted was deficient in his representation "when he failed to appeal from the judgment of conviction on the ground that Petitioner was both actually innocent and the plea was completely devoid of a factual basis as to the 'intent' element of the offense." [Id. at 9.]

The actual record clearly refutes Ingalls' new argument about lack of intent to defraud the victim banks. The record of Ingalls' guilty plea to Counts 1 and 2 of the Information on May 23, 2013, included Ingalls' Application for Permission to Enter Plea of Guilty (Ex. C-1, May 23, 2013) ("Application"), his written plea agreement dated April 8, 2013 (Ex. C-2, May 23, 2013) ("Plea Agreement") and the Transcript of the Rule 11 hearing of May 23, 2013 ("Tr. May 23, 2013").

Ingalls' Rule 11 hearing was careful, clear, detailed, and lasted approximately 42 minutes, including dialog with his then-attorney Mr. Sparaco and extensive answers, under oath, by Mr.

13

Ingalls, who answered the Court's questions for 29 pages of testimony (Tr. May 23, 2013 at 9:20 to 38:21.) Ingalls stated that he had spent considerable time with Mr. Sparaco reviewing the charges and the evidence, weighing his options, discussing his constitutional rights and his waiver of them, filling out the Application, going over the Plea Agreement, learning about sentencing risks, entering into conditional waivers of appeal and post-conviction relief, and other topics, and acknowledging several times that he was pleading guilty of his own free will. Since Ingalls raises an issue only with his factual basis for Count 1, we will not discuss these other facets of his plea.

As to his factual basis for his guilty plea on Count 1 to conspiracy commit bank fraud, he acknowledged that he carefully read, understood, and was guilty of the charge in the Information, which, in summary, alleged an elaborate scheme to defraud the banks, orchestrated by Ingalls and co-defendant Ibn Muhammad, in which they and others stole mail from industrial parks, removed business checks, altered the business checks, recruited a series of accomplices to assist in the cashing of the altered checks in victim banks, and divided the proceeds when the banks paid out funds when presented with the fraudulently altered checks. In the language of the Information, Ingalls admitted he "knowingly and intentionally conspire[d] and agree[d] with Ibn Muhammad, a/k/a "E," and

14

others, to execute a scheme and artifice to defraud financial institutions, namely the Victim Banks, and to obtain moneys, funds, assets, securities, and other property owned by, and under the custody and control of, the financial institutions by means of materially false and fraudulent pretenses, representations, and promises, contrary to Title 18, United States Code, Section 1344." (Information, p. 2.)

Mr. Ingalls answered factual basis questions under oath. (Tr. May 23, 2013 at 30:3-34:21.) He admitted he conspired and agreed with Ibn Muhammad and others to execute a scheme to defraud financial institutions in order to obtain money by false or fraudulent pretenses. (Id. at 30:21-31:2.) He admitted he and others stole business checks from the U.S. Mail, and he recruited others to assist in cashing the checks. (Id. at 31:6-12.) He admitted that after he recruited a check casher, he obtained the check casher's name and identifying information, and he the forged and altered the stolen business checks so that the name of the payee on the check matched the name of the recruited check casher. (Id. at 31:22-32:4.) Not only did he admit he forged the stolen check's payee's name to match the identity of the check casher, but he also admitted that he or a conspirator would "often alter the amount of the check." (Id. at 32:5-7) (emphasis added). He admitted he then transported the check casher and the altered check to the bank that the

15

stolen check was drawn on, and he instructed the check casher to enter the bank and cash or attempt to cash the altered check and bring the proceeds from the cashed stolen check to him and his conspirators. (Id. at 32:8-18.)

He further admitted he instructed the check cashers how to deceive bank personnel if they raised questions. (Id. at 32:19-23.) He admitted that he and his co-conspirators were responsible for cashing approximately 100 false and fraudulently altered or forged checks drawn on accounts of over 20 financial institutions, and that this scheme "involved defrauding or attempting to defraud financial institutions out of $600,000. (Id. at 33:3-12.) Specifically pinpointing his intent to defraud the banks, he answered the following question:

> THE COURT: Did you commit the acts described above knowingly, willfully, and with the intent to defraud?
>
> THE DEFENDANT: Yes.

(Id. at 33:13-15) (emphasis added).

At the conclusion of the colloquy, defense counsel and prosecutor both agreed that the answers established a factual basis for guilt of the crimes charged (id. at 34:22-33:1), as did the Court. (Id. at 34:2-4.) Further the Government proffered that it was prepared to prove each essential element beyond a reasonable doubt, through the testimony of witnesses, the presentation of documents and other evidence collected

during the course of the investigation.  (Id. at 35:5-17.) Among the "essential elements" of the crime of conspiracy to commit bank fraud, identified in the Government's plea memorandum dated May 21, 2013 in connection with the Rule 1 hearing and shared with the defense, was the element "that the defendant did so with the intent to defraud the financial institution."  (Memorandum of AUSA Matthew T. Smith, May 21, 2013, at p. 4.)

There is simply no doubt that Ingalls admitted his factual guilt, including his intent to defraud the banks by taking money in the bank's possession and control by false or fraudulent pretenses.  The factual basis was also buttressed by the Government's unopposed proffer of proof of each essential element, including intent to defraud the banks.  Ingalls' protestation that he only meant to defraud the banks' customers flies in the face of the fact that Ingalls admitted that the alterations to the stolen checks often included changing the amount of money to be paid, as noted above.

Accordingly, even if an amendment to add these grounds of actual innocence and ineffective assistance of counsel were permitted, it would be futile.  The factual basis for his guilty plea fully established all elements, including intent to defraud the banks.  Ingalls' pro se motion to add such claims will be denied.

**CONCLUSION**

For the above reasons, this Court will deny Petitioner's pro se motion to reopen his § 2255 petition and to amend it to add claims of actual innocence and lack of adequate representation by counsel.

The accompanying Order will be entered.


**September 6, 2018**                 **s/ Jerome B. Simandle**
Date                             JEROME B. SIMANDLE
                                    U.S. District Judge